USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/17/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

MAURICE ELLIS, et al.

               Defendants.

No. 19 Cr. 857 (NSR) – 02
No. 19 Cr. 857 (NSR) – 03

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge:

    Defendant Isaac Mallory—charged in an Indictment with one count of narcotics conspiracy and five counts of possession with intent to distribute a controlled substance—filed an omnibus pretrial motion seeking, *inter alia*, (1) suppression of evidence obtained from inside a duffel bag in his possession at the time of his arrest, and (2) dismissal of Count One of the Indictment. ("Omnibus Motion") (ECF No. 100). The Government opposed. ("Gov't Opp'n") (ECF No. 121). The Court granted the request of Defendant Maurice Ellis—charged with one count of narcotics conspiracy and two counts of possession with intent to distribute a controlled substance—to join Defendant Mallory's Omnibus Motion as to all but the suppression count. (ECF No. 126).

    For the following reasons, Defendants' Omnibus Motion is DENIED.

## BACKGROUND

    The following facts are drawn from the criminal complaint filed in this matter ("Complaint") (ECF No. 2), the Indictment (ECF No. 24), and the parties' submissions.

### I. FBI Inventory Search Policy

    In support of its memorandum in opposition, the Government filed an excerpt of the Federal Bureau of Investigation ("FBI") Domestic Investigations and Operations Guide ("DIOG"), which

provides in relevant part:

> 19.7.3 (U) INVENTORY OF PERSONAL PROPERTY
> (U) Arrested subjects often have purses, shoulder bags, suitcases, vehicles, or other personal property capable of containing objects in their possession during an arrest. An inventory of personal property ensures the safekeeping of the property belonging to an arrested subject. It must include both the container and the contents of such container taken into FBI custody.
>
> (U) Items of personal property removed from a person who has been arrested and is to be incarcerated should be carefully inventoried and promptly, thoroughly searched by agents prior to being stored for safekeeping. The inventory must include both the container and the contents of such containers. An inventory search must strictly adhere to the following standardized criteria and procedures for collection of property:
>
> (U) As a threshold matter, in order for an inventory search to be valid, agents must have gained possession of the property lawfully.
>
> (U) As a general rule, after lawfully taking custody of property, FBI employees must conduct a prompt and thorough search of the contents of the property, including searching any locked or unlocked containers and inventorying their contents. A written summary showing the results of the inventory must be recorded in an . . . FD-597 ("Receipt for Property") . . . . The written summary must include, but is not limited to, a description of the property and the items secured for safekeeping. Agents must provide receipts for all items retrieved during inventory searches. Agents should also memorialize facts pertinent to other activities undertaken during the inventory process, such as an interview . . .
> . . . .
> (U) Whenever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a search warrant when feasible. Searches conducted pursuant to a warrant are presumptively valid. Obtaining a search warrant eliminates any later argument that the inventory search was conducted solely for investigative purposes and thus unjustified.
> . . . .
> (U) The following two examples illustrate circumstances under which an inventory search could be conducted:
> A) Example: (U) Agents arrest an individual on a federal warrant and seize a backpack he has in his possession at the time of arrest. Although there is no probable cause to believe that the backpack contains contraband or items of an evidentiary nature, agents are permitted to inventory the items contained in the backpack as well as open any locked containers locked therein. (Note: This type of search may also be permissible as a search incident to arrest.) . . . .

Gov't Opp'n Ex. 2 ("DIOG Section 19.7.3") (ECF No. 121-2).

**II. Relevant Case History**

On or about September 30, 2019, Magistrate Judge Lisa Margaret Smith signed a Complaint charging Defendants with, *inter alia*, conspiring to sell cocaine base, or crack, in violation of 21 U.S.C. §§ 812, 841 (a)(1) and (b)(1)(C), and 846, and issuing arrest warrants. (ECF Nos. 2, 4-8).

Defendant Mallory was arrested on October 3, 2019. Gov't Opp'n Ex. 1 ("FBI Record") at 1 (ECF NO. 121-1); Mallory Arrest Warrant (ECF No. 6). At the time of the arrest, the agents seized items in Mallory's possession, including a duffel bag. FBI Record; Declaration of Isaac Mallory ("Mallory Decl.") ¶ 3 (ECF No. 101). The agents inventoried the items seized, including the contents of the duffel bag. *Id*. All of the items except two cellular phones found on Mallory's person and two cellular phones found inside the duffel back were returned to Desiree Werner. *Id*. The Government subsequently obtained a warrant to search the phones. Gov't Opp'n at 2. On or about November 26, 2019, a grand jury returned an Indictment, Count One of which charges Defendants with conspiring to sell 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 812; 841 (a)(1) and (b)(1)(A), (C), and 846, from in or about March 2019 through in or about September 2019 within the Southern District of New York. Indictment.

Defendant Mallory filed this Omnibus Motion on July 8, 2020. Omnibus Motion. The Government filed its memorandum in opposition on August 25, 2020. Gov't Opp'n. The Court subsequently granted Defendant Ellis' request to join Defendant Mallory's motion except with respect to suppression. (ECF No. 126).

## DISCUSSION

### I. Defendant Mallory's Motion to Suppress

Defendant Mallory asks the Court to suppress all evidence obtained from the closed duffel bag in his posession at the time of his arrest. (ECF Nos. 100, 102). Specifically, he contends that the Government unlawfully seized two cellphones that were located in his closed duffel bag at the time of

3

his arrest.[1] Omnibus Motion; Affidavit of Patrick Joyce ("Joyce Aff.") 1-2 (ECF No. 102). The Government responds that suppression is unwarranted since Defendant's Fourth Amendment rights were not violated because two exceptions to the warrant requirement apply: (1) the phones were found as part of a routine inventory search at the time of Defendant Mallory's arrest, and (2) even if they were not found lawfully in the first instance, they would have inevitably been discovered based on FBI's standard inventory policies and practices. Gov't Opp'n.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[O]ne whose Fourth Amendment rights are violated may successfully suppress evidence obtained in the course of an illegal search and seizure." *Rakas v. Illinois*, 439 U.S. 128, 138 (1978). "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation mark omitted). However, such a hearing is not required where a defendant's submissions "[do] not demonstrate the existence of disputed material facts regarding the legality of the search." *United States v. Mottley*, 130 F. App'x 508, 509 (2d Cir. 2005) (internal quotation mark omitted).

Defendant Mallory argues that the search of the contents of his duffel bag was unlawful, claiming without analysis that none of the exceptions to the warrant requirement applies.[2] Joyce Aff. at 2. In response, the Government argues that the challenged search is permissible under both the

---

[1] The Government subsequently procured a warrant to search all four of the phones seized during Defendant Mallory's arrest. Gov't Opp'n at 2. Defendant Mallory only seeks to suppress the two phones found in his duffel and not the two found on his person. Omnibus Motion. He also does not appear to challenge the Government's search of the phones pursuant to the warrant. *See* Gov't Opp'n at 6 n.1.

[2] Defendant's motion papers do not mention either the inventory search or inevitable discovery exceptions to the warrant requirement.

inventory search and inevitable discovery exceptions to the warrant requirement. Gov't Opp'n at 2-7.

### a. Inventory Search

"[T]he inventory search constitutes a well-defined exception to the warrant requirement." *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002). "Under the inventory search doctrine . . . law enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to standardized criteria . . . or established routine.'" *Id.* (internal quotation mark omitted); *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."). Warrantless inventory searches may be conducted in order to (1) protect the owner's property while property is in police custody; (2) protect the police against claims of lost or stolen property; or (3) protect the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). "The existence of . . . a valid procedure may be proven by reference to . . . written rules and regulations[.]" *Mendez*, 315 F.3d at 137 (citations omitted). Further, "the Fourth Amendment does not require that police conduct inventory searches at any particular location." *Id.* (citing *Bertine*, 479 U.S. at 368–69, 375–76).

Here, the arresting agents seized the items in Defendant Mallory's possession and inventoried them, including the contents of the duffel bag. Declaration of Isaac Mallory ("Mallory Decl.") (ECF No. 101); FBI Record. DIOG Section 19.7.3 instructs agents that inventory of the personal property of arrested subjects "must include both the container and the contents of such container taken into police custody" and must be recorded on appropriate forms. DIOG Section 19.7.3. Special Agent Fisher completed both form FD-302, describing the arrest and inventory, and form FD-597, Receipt for Property. FBI Record. FD-597 describes the items seized, including the items located within Defendant Mallory's duffel bag. *Id.* Because the search complied with DIOG Section 19.7.3 and there is no

suggestion that the search was anything other than a routine inventory search, it was permissible under the inventory search exception to the warrant requirement. *See, e.g.*, *Lafayette*, 462 at 647 ("[E]very consideration of orderly police administration benefiting both police and the public points toward the appropriateness of the examination of respondent's shoulder bag prior to his incarceration."); *United States v. Gorski*, 852 F.2d 692, 695–96 (2d Cir. 1988) (upholding inventory search of bag as a proper incident of lawful arrest and detention).

### b. Inevitable Discovery

"Under the inevitable discovery doctrine, evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation." *Mendez*, 315 F.3d at 137 (internal quotation marks and citation omitted). To prevail under the inevitable discovery doctrine here, the Government must demonstrate

> (1) that the police had legitimate custody of the . . . property being searched, so that an inventory search would have been justified; (2) that when the police in the police agency in question conducted inventory searches, they did so pursuant to "established" or "standardized" procedures; and (3) that those inventory procedures would have "inevitably" led to the "discovery" of the challenged evidence.

*Id.* 315 F.3d at 137–38 (internal citations omitted).

The evidence collected from Defendant Mallory's duffel bag is exempt from the search warrant requirement under the inevitable discovery doctrine. First, because the FBI arrested Defendant Mallory pursuant to an arrest warrant, the FBI had "legitimate custody" of both Defendant and his possessions.[3] *See United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993) ("if there has been a lawful arrest . . . a motion to suppress the proceeds of the immediate search may . . . be denied if the contents would inevitably have been discovered in a permissible inventory search"). Second, the Government provided

---

3 Defendant Mallory does not argue that the arrest itself was invalid. *See* Mallory Decl.; Joyce Aff.

DIOG Section 19.7.3, which appears to have guided the search, and Defendant has not raised a question of material fact regarding whether the FBI inventory search policy is established or whether it was followed here. *See Mendez*, 315 F.3d at 137 ("The existence of . . . a valid procedure may be proven by reference to . . . written rules and regulations . . ."). Third, given the existence of DIOG Section 19.7.3, an inventory search of the items in Mr. Mallory's possession at the time of his arrest was inevitable and Defendant has not disputed the inevitability of an inventory search. *See Mendez*, 315 F.3d at 139 (2d Cir. 2002) ("[W]e conclude that the evidence would inevitably have been discovered in a valid inventory search."); *United States v. Sobers*, 792 F. App'x 904, 906 (2d Cir. 2020) (assuming without deciding that warrantless search of backpack defendant carried at time of arrest was unconstitutional but that gun in the backpack would have been inevitably discovered based on police inventory procedures). Moreover, any evidence the Government found on the cellphones that were in the duffel bag at the time of Mr. Mallory's arrest was lawfully retrieved pursuant to a subsequent search warrant. Gov't Opp'n at 2.

Because the Government's search of the duffel bag that was in Defendant's possession at the time of his arrest falls within the inventory search and inevitable disclosure exceptions to the warrant requirement, the Court denies Defendant Mallory's motion to suppress.

**II. Defendants Mallory and Ellis' Motion to Dismiss Count One of the Indictment**

Defendants Mallory and Ellis ask the Court to dismiss Count One of the indictment, which charges that the Defendants "conspired to distributed and to possess with the intent to distribute . . . 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841 (b) (1) (A)." Indictment, Count One. As explained below, Count One is constitutionally sufficient and both of Defendants' arguments to the contrary are unavailing.

There are "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (internal quotation mark omitted). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013).

Count One of the Indictment is constitutionally sufficient where it charges specific acts Defendants were involved in as part of the conspiracy. Specifically, it charges that Defendant Mallory took overt acts in furtherance of the conspiracy when he sold crack cocaine on or about August 30, 2019 in and around Peekskill, New York with a co-Defendant, Indictment, Count One ¶ 4.c; on or about September 6, 2019 in and around Peekskill, New York, with a co-Defendant, *id.* ¶ 4.d; on or about September 11, 2019 in and around Cortland, New York, *id.* ¶ 4.e; on or about September 13, 2019 in and around Cortland, New York, *id.* ¶ 4.g; and on or about September 16, 2019 in and around Peekskill, New York, with a co-Defendant, *id.* ¶ 4.h. Count One of the Indictment charges that Defendant Ellis took overt acts in furtherance of the conspiracy when he sold crack cocaine on or about May 31, 2019 in and around Peekskill, New York, *id.* ¶ 4.b; and on or around September 12, 2019 in and around Cortland, New York, *id.* ¶ 4.f. Because Count One describes specific overt acts the Defendants took as part of the charged conspiracy, it is sufficient under the law. *See United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975) (upholding indictment that "followed the language of the conspiracy statute, stated in broad terms the time and place of the crime, and specified . . . overt acts in furtherance of the crime.")

To the extent Defendants are challenging the adequacy of the indictment based on their contention that "cursory math reveals that even if [the] purchases [charged in the indictment] are aggregated, they cannot and do not rise beyond the 280-gram threshold," Joyce Aff. at 4, the argument "appears to be a challenge to the adequacy of the evidence upon which the Indictment is based," which "does not constitute a basis for dismissing an indictment." *United States v. Turner*, No. 5:05-CR-449 (FJS), 2006 WL 8446338, at *3 (N.D.N.Y. June 19, 2006) (declining to dismiss indictment where defendant argued it would be "virtually impossible for the Government to have presented to the Grand Jury competent evidence of an aggregate weight of 111 grams of heroin allegedly possessed by the conspirators"); *see United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."); *cf. United States v. Lighten*, No. 08-CR-214-A, 2012 WL 5471954, at *2 (W.D.N.Y. Nov. 9, 2012) (declining to dismiss indictment where superseding indictment did not specify the weight of the cocaine base involved in the trafficking charges).

To the extent Defendants argue that the indictment fails to state a charge of conspiracy where Defendant Mallory is specifically charged with conspiring with the Government's confidential informant and alleges no facts that create any "dependence or mutuality among the several [defendants]," Joyce Aff. at 5-7, Defendants have misstated the contents of the Indictment. Rather than solely charging Defendant Mallory with sales to unidentified individual(s), Count One charges Defendant Mallory with selling crack cocaine with at least two of the other named Defendants on specific dates and in specific places. *See, e.g.*, Indictment, Count One ¶¶ c (August 30, 2019 sale with Defendant Garraway in and around Peekskill, New York), d (September 6, 2019 sale with Defendant

Sims in and around Peekskill, New York), h (September 16, 2019 sale with Defendant Sims in and around Peekskill, New York). Because Count One charges specific overt acts the Defendants took as part of the charged conspiracy, it is sufficient under the law. *See Tramunti*, 513 F.2d at 1113 ("The Government was not required to provide in the indictment a detailed statement of all the parties with whom [defendant] was alleged to have had dealings during the term of the conspiracy"). To the extent Defendants question the sufficiency of the evidence, that argument is not properly addressed in a pre-trial motion to dismiss the indictment. *Alfonso*, 143 F.3d at 776–77.

Accordingly, the Court denies Defendants' motion to dismiss Count One of the Indictment.

## CONCLUSION

For the foregoing reasons, Defendants' Omnibus Motion is DENIED as to suppression and dismissal of the indictment. To the extent Defendants have reserved the right to move to sever their trials from their co-defendants, any motion to sever shall be filed within forty-five (45) days of the date of this opinion and order. The Court denies as moot the remaining requests in Defendants' Omnibus Motion.

The Clerk of Court is directed to terminate the motion at ECF No. 100.

Dated:   November 17, 2020          SO ORDERED:
        White Plains, New York

                                                                                         NELSON S. ROMÁN
                                                                                        United States District Judge